UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re                                                                    Chapter 11

*KOLLEL MATEH EFRAIM, LLC, a/k/a*              *Case No. 04-16410 (SMB)*
*MATEH EPHRAIM LLC, a/k/a*
*KOLEL MATEH EFRAIM*

                                      Debtor.
------------------------------------------------------------------x
**ARON FIXLER; MATEH EPHRAIM LLC d/b/a**
**KOLEL MATEH EFRAIM, LLC**

                                      Plaintiffs,        **Adv. Pro. No. 07-01937-SMB**

        -against-                                        **ANSWER**

**HELEN-MAY HOLDINGS, LLC, and**
**IRENE GRIFFIN**
                                      Defendants
------------------------------------------------------------------x


        Defendants Helen-May Holdings, LLC, and Irene Griffin, (collectively, the "Defendants"), by

their attorneys, Scher & Scher , P.C.,  David Carlebach, Esq., of counsel, for their answer in response to

the complaint, allege upon information and belief, as follows:

        1.   Deny each and every allegation contained in paragraphs 11, 12, 14 and 24 of the

Complaint.

        2.   Deny knowledge or information sufficient to form a belief as to the truth of each and

every allegation contained in paragraphs 2 and 20 of the Complaint.

        3.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations

contained in paragraph 1 of the Complaint and specifically denies that KOLEL MATEH EFRAIM,

LLC is a Limited Liability Company at all.

4. Deny each and every allegation contained in paragraph 5 of the Complaint except admit that on or about April 29, 2004 HELEN-MAY HOLDINGS, LLC acting through its member IRENE GRIFFIN who acted solely as an agent for a disclosed principal did enter into an Agreement of Sale with plaintiff, ARON FIXLER, with respect to the property described in the Complaint and beg leave to refer to the specific Agreement leaving the interpretation thereof to the Court.

5. Deny each and every allegation contained in paragraph 6 of the Complaint except admit that it appears that plaintiff, ARON FIXLER, assigned all of his rights under the Agreement retaining none to himself to an entity described as KOLEL MATEH EFRAIM.

6. Deny each and every allegation contained in paragraph 7 of the Complaint and specifically refers the Court to the Contract documents leaving the interpretation thereof to the Court.

7. Deny each and every allegation contained in paragraph 8 of the Complaint and refers the Court to the Contract documents leaving the interpretation thereof to the Court and affirmatively asserts that "Contract provides that the tax map designation" of the property is Section: 1, Block : 1, Lot: 39.1 and specifically alleges that the property was to be sold solely pursuant to the description contained in Schedule A thereof.

8. Deny each and every allegation contained in paragraph 9 of the Complaint and specifically alleges that the "Tax Map designation" for the premises is: Section: 1, Block: 1, Lot: 39.1 as recited in the Contract of Sale.

9. Deny each and every allegation contained in paragraph 10 of the Complaint and specifically alleges that the Contract contains a provision:

"§46 Seller makes no representation as to the actual land area or acreage of the premises conveyed and which is more particularly described in Schedule "A"".

10.    Deny each and every allegation contained in paragraph 13 of the Complaint and affirmatively alleges that the Contract of Sale contained a merger clause in the following language: "§17.02. This contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein, and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract. Neither this contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument."

11.    Deny each and every allegation contained in paragraph 15 of the Complaint except admit the entry into an Occupancy Agreement and deny knowledge or information sufficient to form a belief as to the specific actual and legal characterization of said occupancy leaving the interpretation to the Court pursuant to the relevant documents, statutes and case law leaving the interpretation thereof to the Court.

12.    Deny each and every allegation contained in paragraph 16 of the Complaint and specifically deny that plaintiff MATEH has been utilizing the property solely as a Not-For-Profit Camp entity and upon information and belief has in fact used the property for the purpose of earning a profit for one Jack Lefkowitz .

13.    Deny each and every allegation contained in paragraphs 17 and 18 of the Complaint and affirmatively allege that any improvements to the property were made without the specific written

3

consent of the defendants which were required under the terms of the June 3, 2004 Occupancy

Agreement and Contract and if they were done they were done at plaintiffs own peril and without

justifiable reliance as required by the provision of the June 3, 2004 Occupancy Agreement.

14.   Deny each and every allegation contained in paragraph 19 of the Complaint except admit

that had plaintiff made certain payments which it failed to make, defendant HELEN-MAY would

have extended the Closing date.

15.   Deny each and every allegation contained in paragraph 22 of the Complaint except admit

that one Jack Lefkowitz who claimed to be acting on behalf of plaintiff MATEH met with defendants

on several occasions.

16.   Deny each and every allegation contained in paragraph 23 of the Complaint and

specifically deny that defendants had any Survey of the premises.

17.   Deny each and every allegation contained in paragraph 25 of the Complaint except admit

that an entity calling itself KOLEL MATEH EFRAIM, LLC filed a Petition under Chapter 11 of the

Bankruptcy Code.

### AS AND FOR AN ANSWER TO THE FIRST CAUSE OF ACTION

18.   Admit and deny each and every allegation incorporated by reference  into paragraph 27

of the Complaint as heretofore admitted and denied.

19.   Deny each and every allegation contained in paragraphs 30 and 33 of the Complaint.

20. Deny knowledge or information sufficient to form a belief as to the truth of the allegations

contained in paragraph 31 of the Complaint.

4

21.  Deny each and every allegation contained in paragraph 28 of the Complaint except admit that defendant IRENE GRIFFIN was and is the manager member of defendant HELEN-MAY HOLDINGS LLC and alleges that she acted at all times as an agent for a fully disclosed principal.

22.  Deny each and every allegation contained in paragraph 34 of the Complaint and affirmatively alleges that plaintiffs have no remedy at law or in equity in view of their wilful breaches of the Agreements upon which they sue.

### AS AND FOR AN ANSWER TO THE SECOND CAUSE OF ACTION

23.  Admit and deny each and every allegation incorporated by reference  into paragraph 35 of the Complaint as heretofore admitted and denied.

24.  Deny each and every allegation contained in paragraphs 37, 39, 41 and 42 of the Complaint.

25.  Deny each and every allegation contained in paragraph 36 of the Complaint except admit that HELEN-MAY made an Agreement with plaintiff ARON FIXLER and specifically deny any reference or representation with respect to acreage therein.

26.  Deny each and every allegation contained in paragraph 40 of the Complaint and affirmatively allege that plaintiff FIXLER specifically assumed all risks with respect to the area and acreage of the property.

### AS AND FOR AN ANSWER TO THE THIRD CAUSE OF ACTION

27.  Admit and deny each and every allegation incorporated by reference  into paragraph 43 of the Complaint as heretofore admitted and denied.

28.  Deny each and every allegation contained in paragraphs 45, 46, 47, 48, 51, 52 and 53 of the Complaint.

5

29.  Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 49 and 50 of the Complaint.

## AS AND FOR AN ANSWER TO THE FOURTH CAUSE OF ACTION

30.  Admit and deny each and every allegation incorporated by reference  into paragraph 54 of the Complaint as heretofore admitted and denied.

31.  Deny each and every allegation contained in paragraphs 56 and 57 of the Complaint.

32.  Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 55 of the Complaint and affirmatively allege that plaintiff MATEH is not the Contract vendee.

## AS AND FOR AN ANSWER TO THE FIFTH CAUSE OF ACTION

33.  Admit and deny each and every allegation incorporated by reference  into paragraph 58 of the Complaint as heretofore admitted and denied.

34.  Deny each and every allegation contained in paragraphs 60, 61 and 62 of the Complaint.

35.  Deny each and every allegation contained in paragraph 59 of the Complaint except admit that plaintiff FIXLER entered into a Contract with respect to the property described with defendant HELEN-MAY.

## FIRST AFFIRMATIVE DEFENSE

1.  The complaint, and each purported claim for relief therein, fail to state a claim  against any of the Defendants upon which relief may be granted.

6

## SECOND AFFIRMATIVE DEFENSE

2.  The complaint fails to comply with the specificity requirements of Fed. R. Civ. P. 9(b) and Bankruptcy

Rule 7009.

## THIRD AFFIRMATIVE DEFENSE

3.The relief sought by the plaintiff is barred by the doctrine of  unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

4.Plaintiff lacks capacity and/or standing to prosecute the claims herein.

## FIFTH AFFIRMATIVE DEFENSE

5.The relief sought by the plaintiff is barred by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

6.The relief sought by the plaintiff is barred by the doctrine of equitable and/or judicial estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

7.Plaintiffs claims are barred by the Statute of Frauds.

## EIGHTH AFFIRMATIVE DEFENSE

8.Plaintiffs claims are barred by the Parol Evidence Rule.

## NINTH AFFIRMATIVE DEFENSE

9.Plaintiffs have failed to join a necessary party.

## FACTS PERTAINING TO HELEN-MAY'S COUNTERCLAIMS

10.   On or about April 29, 2004, defendant and third Helen-May entered into a contract of sale (the "Contract") with an individual known as Aron Fixler for the sale of the property known as the Meadows Resort located  at 1141 County Road 114, Fosterdale, New York (the "Property").

9.      Thereafter, by written assignment dated May 18, 2004,  Aron Fixler assigned the Contract to the Debtor.

10.      At or about the time scheduled closing, Defendants were advised by the Debtor's real estate counsel that the Debtor was short of funds, but expected them any day.

11.      As a result the Debtor requested that it be allowed to occupy the premises and conduct its affairs which were stated in the Contract to be a "Yeshivah with Dormitory Facilities."

12.      Defendant allowed the debtor to occupy the premises under specific conditions as agreed to in a letter agreement dated June 3, 2004, (the "Occupancy Agreement"), with (2) two significant components in addition to other terms and conditions thereof.  Those were  the payment of money and the requirement of prior approval of all proposed work or renovations at the premises.

8

13.    Neither Plaintiff, and Aron Fixler, never had the realistic ability to close, nor ever expected to have the ability to close, but rather were just seeking to string Helen-May along and then commence harassment litigation to prolong their occupancy.

14.    The Contract contains the specific provision that the property was being sold "as is". It contains a merger clause which bars, as a matter of law, any extraneous representations or understandings with respect to the Contract other than those contained within the four corners of the Contract.

15.    The Debtor failed to honor its obligations under that agreement and thereby breached said agreement.

16.    More significantly, the contract contains an additional and specific disclaimer provision with respect to the amount of the acreage which states as follows:

> "§46. Seller makes no representation as to the actual land area or acreage of the premise conveyed and which is more particularly described in Schedule "A"".

17.    Said Schedule A references a "tax map designation" which does not include an actual tax map nor does it incorporate same by reference.  Said provision refers to the Section, the block and lot of the premises as the "designation".  No tax map was ever incorporated into the

Contract by reference nor was one included with it, notwithstanding that it was available to the parties at the time and could have been included. .

18.    Further, any right the Debtor had to raise this claim was waived in writing.

19.    The extension of the Debtor's time to close title as well as the Debtor''s right to occupy the premises was through the Occupancy Agreement.   In the very first provision of the agreement, the contract  states:

> "The closing of title shall take place, on or before, September 27, 2004, time is of the essence as to your client [the Debtor] only. We also must agree that in all title as appears in the current search is deemed marketable and acceptable. Purchaser shall accept title subject to any title issues which are the direct result of the Purchasers acts, actions or conduct. All issues surrounding the condition of the property which may be raised at the closing are hereby waived and may not be raised in the future".

20.    The extension of time was predicated upon a payment which was admittedly not made.  Indeed, said agreement dated September 22, 2004, between Movant and the Debtor to extend the time of the essence clause through November 29, 2004 (the "Conditional Extension Agreement"), was expressly conditioned on the immediate payment of an additional amount of $20,250.00, with a second payment of  $20,250.00 due on October 27, 2004. In that regard the Conditional Extension Agreement states as follows:

> "The Purchaser will pay the additional sum of $20,250.00 upon return of this letter and $20,250.00 on or before October 27, time being of the essence".

10

21.    Indeed, even the final "time of the essence" closing date in the Conditional Extension Agreement, of November 29, 2004, has now long since passed.

22.    A second follow-up letter dated September 23, 2004, further stated specifically that without the payments the Conditional Extension Agreement was not effective. It states:

> "We would like to remind you[r] client that, by its terms, it is not effective until the $20,250.00 payment and that he has obligations regarding insurance he must comply with".

23.    The Debtor has complied with virtually none of the conditions of the Conditional Extension Agreement. The Debtor sent a check of one, Maskil El Dal, Ltd. , and thereupon immediately advised the Movant through counsel that payment on the said check was being stopped. Indeed, the check was deposited by Movant and returned. The time to make the second payment of $20,250.00 on October 27, 2004, has also passed without payment being made.

24.    Thus, the Debtor never obtained the additional time and on September 27, 2004, all of the Debtor's rights under the Contract terminated pursuant to the agreements.

25.    The Debtor performed various sorts of illegal work and alterations of the existing structures at the property which it has self-servingly styled as improvements. Under the agreements, the making of improvements was permitted only with the prior approval of the Movant with contract provisions as follows:

> They must maintain the premises in good order and may not make improvements that require the approval of any governmental agency. A list of all proposed improvements Purchaser proposes must be furnished to Seller and its attorney (by FAX) in writing no less than three (3) days prior to the commencement of such work for Seller's

11

approval. Seller may withhold approval for such improvements for any reason, or no reason at all. In the event that Seller does not object and decline to approve such improvement within seventy-two (72) hours of receipt of the notice, Purchaser may proceed with the improvement. Further, Purchaser may not operate in any manner that requires any governmental approval without first obtaining same.

26.    The Debtor never sought prior written approval for any improvements. Work which was done completely violated this requirement . A series of seven (7) letters from June through August of 2004 repeatedly requesting information as to proposed or actual improvements were sent to the Debtor seeking compliance with the terms of the Occupancy Agreement. The Debtor never once complied with the terms of the Occupancy Agreement in this regard and each and every improvement was done in breach of and in violation of the terms of the Occupancy agreement.

27.    The illegal improvements give rise to significant claims for damages against the Debtor by the Defendants. The alterations have significantly damaged the Property and appear to give rise to numerous building code violations. For example:

a)    Metal fire escape replaced with a wooden structure;
b)    Walls erected where none existed;
c)    Existing walls were breached;
d)    Unauthorized and incompatible plumbing and electrical modifications;
e)    Kitchen equipment removed and/or discarded;
f)    Fixtures Fittings & Equipment removed and/or discarded;
g)    Erection of a barrier around pool;
h)    Crusher run (gravel and concrete mixtures) on grassy meadows;
i)    Breach of barrier (natural and man-made) between the premises and neighboring properties
j)    A boiler was damaged during occupancy and needs replacing.

28.    The Occupancy Agreement further states:

"Purchasers agree that except for the willful default of the Seller in refusing to close, they will not file a Notice of Pendency or other lien against the Property in connection with a lawsuit or otherwise. In connection with the Occupancy Agreement, they will execute a

12

document in recordable form to that effect. Thereafter if they do file such a Notice of Lien which Sellers are successful in having vacated, the shall be additionally liable to the Seller for the additional liquidated amount of $100,000.00 per month for each month or portion thereof that the lien or notice remains of record together with attorneys fees incurred".

29.    This provision, among others, is a specific waiver by the Debtor of the filing of any type of claim against the Movant with respect to the occupancy of the Debtor. Indeed, the filing of this bankruptcy proceeding with, *inter alia,* the rationale of the of the performance of improvements has the same effect as such a lien and the Debtor should be subject to the liquidated damage amount. Those conditions contained in the occupancy agreement were the only conditions under which Movant agreed to allow the Debtor to occupy its Property prior to closing, which was permitted only for the Debtor's sole benefit and as accommodation to it . For the Debtor, now egregiously in default on the closing date, to assert bogus improvement claims, is in clear violation of the both the letter and spirit of the Occupancy Agreement in unconscionable.

30.    The Occupancy Agreement states further as follows:

"Your client is responsible for paying our client all of their carrying charges, including, but not limited to:

Mortgage: $9,750.00

Insurance: $2,500.00

Interest on our clients credit card debt: $3,500.00

With the increase of the liability coverage, we expect the insurance premium to increase. Your client will pay any increases as a result of the increased coverage or such increase which may be the result of their use of the premises, if any.

Your clients will be responsible for the payment of all utilities, including, telephone, oil, propane, etc. and other ongoing expenses of operating the Meadows".

13

The Debtor has not made such payments to Defendant sufficient to allow it to make its own

mortgage payments as contemplated by the agreement, nor has it paid the Property's post-petition

expenses in a timely fashion as ordered by the Bankruptcy Court.  Real Estate Taxes due which

debtor is  obligated to pay  have not been paid.

31.    Furthermore, under the Occupancy Agreement the Debtor is required to pay

the Movant $1,500.00 per day for each additional day it remains on the Property in the event it fails

to close timely.  Such payments have not been made.  The Occupancy Agreement provides  as

follows:

> "In the event that the Purchaser fails to close on or before September
> 27, 2004, for each day the continue to occupy the premises they shall
> become liable to the Seller for the additional sum of $1,500.00 which
> will continue to accrue until they quit the premises and remove all of
> their belongings".

32.    The Debtor facing the predicament of having failed to do its due diligence and

having no recourse proceeded to engage in a series of frauds and artifices in order to artificially create

standing for a lawsuit where none existed.

33.    The first fraud and artifice was the sworn allegation by Jack Lefkowitz and the

Debtor that Helen-may had a survey of the Property and deliberately withheld it from the Debtor and

Mr. Lefkowitz.  In point of fact no such survey exists and thus it could not have been seen by Mr.

Lefkowitz.  The purpose of this deliberately false artifice was to create the illusion of a fraud claim

against Helen-May.

14

34.     During this period, having already obligated itself to pay Helen-May substantial sums of money under the Contract, the Debtor purportedly began incurring significant creditor claims with no intention of repayment.  At the same time rather than utilize its funds to close with Helen-May or to pay its ongoing expenses, the Debtor purchased two contiguous parcels of land which allegedly have a value of $600,000.00.

35.     Having purchased the contiguous parcels the debtor was now desperate to keep the Defendant's Property notwithstanding its lack of cash.   The Debtor, therefore, decided to interpose bogus fraud allegations and, thus, attempts to avail itself of such legal remedies as reformation and the imposition of a constructive trust.  The fraud allegation, however,  based on the purported existence of a prior survey, ordered and deliberately withheld from the Debtor by Helen-May, is knowingly and deliberately false and interposed for the sole reason of creating grounds for a fraud lawsuit where none exists.

36.     Even after the creation and interposition of these bogus claims, the Debtor was faced with a further hurdle.  If it were successful, as it has been to date, in convincing the Bankruptcy Court that this case should remain in bankruptcy based on the Contract the Occupancy Agreement and the Conditional Extension Agreement it would have to comply with the terms of those agreements and pay the various fees and charges associated with those agreements.  Those fees and charges are presently well in excess of $500,000.00 and accrue on a daily and monthly basis.

15

37.     In order to avoid such fees and charges the Debtor and Lefkowitz conjured up a second scheme alleging that various violations of the automatic stay constituted an actual and or/ constructive eviction and excused the Debtor of all of its  obligations under the aforementioned agreements.

38.     The Movant's principal, Irene Griffin, and her husband went to the Property on October 5, 2004, seeking to ensure that nothing would be removed from the Property as a result of the Chapter 11 filing.  There they encountered the caretakers Wolfgang and Susan as well as Mark who was working with Mr. Lefkowitz.  They advised those three parties that a Chapter 11 had been filed and that nothing should be removed from the premises.

39.     Paul Griffin also took pictures of the Property at the time of his visit.  The pictures reflected a totally empty facility with no food preparation or guests.

40.     The next day at about 11:00 a.m., a facsimile letter was received by Daniel J. Scher, counsel to Helen-May, advising him that Helen May had violated the stay in its October 5, 2004, visit by "actually evicting 40 guests".

41.     This was false and demonstrably so since the pictures taken at the time of the visit reflect no food preparation or guests.

16

42.     Counsel, immediately responded by letter of same date advising counsel to the debtor that the claim was absolutely false.

43.     In the interim on or about November 15, 2004 the previous adversary proceeding was filed now alleging, for the first time, that the eviction was not actual but constructive, that somehow Helen-May had interfered with the operations of the Debtor and forced it to cancel two bookings on the weekends of October 7, 2004, and October 14, 2004, and created a loss of $80,000.00.

44.     This allegation was a totally false artifice, fabricated, once again, out of the whole cloth because the actual eviction claim began to unravel.

45.     Thereafter a motion was made to the Court dated seeking to excuse the Debtor of all charges and fees based on this purported eviction which was now claimed to be constructive not actual.

46.     The said motion was baseless and without merit under the controlling law in the Sate of New York on these issues.

47.     Attached to the motion and in support thereof were three letters dated October 5, 2004, October 6, 2004 and October 11, 2004, from The Friedman Family of Toronto and signed by Mendel Friedman all alleging that Helen-May  had interfered with its business operations.

17

48.     These letters, which surfaced for the first time in support of the Motion, are a complete and total fabrication both in substance and in form.  Indeed, no further letters alleging such stay violations were made by the Debtor during the period of October 6, 2004, through October 11, 2004.  Not only did the Debtor not seek relief through Court injunction to enjoin the violative conduct, counsel did not mention one word by telephone or in writing regarding these stay violations. Indeed, even the letter sent on October 6, 2004, only dealt with the actual eviction of guests, not the purported constructive evictions.

49.     The claim was false and demonstrably so since if indeed there were true bookings for the upcoming holiday weekends massive food preparation would have to have been going on the premises. The October 5, 2004, pictures reflect an empty and dormant facility with no holiday preparations, no guests and no activity.

50.     Thereafter in connection with the instant action, plaintiff once again made false allegation that PAUL GRIFFIN had come on the premises and made statements to guests that they were being evicted.

51.     The statements were alleged to have been made by PAUL GRIFFIN on June 22, 2007.

52.     On June 22, 2007, PAUL GRIFFIN was not at the premises in Sullivan County nor was he even in the State of New York.

53.     The claims were therefore demonstrably  false and untrue.

54.     To date Plaintiff s has not surrendered the premises or moved its belongings.

18

55.     These claims are totally false fabricated out of the whole cloth by Messrs. Lefkowitz and Friedman in order to assist Mr. Lefkowitz in his continuing attempt to avoid paying under the agreements while reaping the benefits therefrom.

56.     These claims were created through a conspiracy between Lefkowitz the plaintiffs and others to defeat the rights of Helen-May.

## AS AND FOR  A FIRST COUNTERCLAIM AGAINST THE DEBTOR

57.     Defendant repeats the prior allegations contained in paragraphs 1 through 55 herein.

58.     Plaintiff is liable for all of the payments due under the Occupancy Agreement and Conditional Extension Agreement.

59.     Plaintiff has failed to fully and timely make those payments by interposing phony and sham claims against Helen-May.

60.     Plaintiff is liable for all of those payments due under the agreements.

## AS AND FOR  A SECOND COUNTERCLAIM AGAINST THE DEBTOR

61.    Defendant repeats the prior allegations contained in paragraphs 1 through 59 herein.

62.    Plaintiff, by its aforementioned conduct,  has breached all of its various agreements with Helen-May including the Contract, the Occupancy agreement and the Conditional Extension Agreement.

63.    As a result of those breaches Helen-My has been damaged.

64.    Plaintiff is liable for all of the damages incurred by Helen May as a result of Plaintiff's breaches.

## AS AND FOR  A THIRD COUNTERCLAIM AGAINST THE DEBTOR

65.    Defendant repeats the prior allegations contained in paragraphs 1 through 63 herein.

66.    Plaintiff, MATEH, by the construction of the illegal improvements at the property, has damaged the Property.

67.     Plaintiff MATEH is liable for all of the damages incurred by Helen May as a result of the illegal improvements at the Property including all costs associated with restoring the Property to its original condition.

## AS AND FOR  A FOURTH COUNTERCLAIM AGAINST THE DEBTOR

68.     Defendant repeats the prior allegations contained in paragraphs 1 through 66 herein.

69.     In the interim Helen May has received unsolicited offers for the Property in excess of the sale price.

70.     By virtue of Plaintiff MATEH's breach of its agreements to timely close and subsequent interposition of the instant bankruptcy proceeding Helen-May has been prevented from capitalizing on these and other business opportunities in connection with the Property and has suffered economic losses as a result thereof.

**AS AND FOR  A FIFTH COUNTERCLAIM AGAINST THE DEBTOR**

71.    Defendant repeats the prior allegations contained in paragraphs 1 through 69 herein.

72.    Plaintiff has breached its duty of good faith and fair dealing under its various contractual agreements with Helen-May.

73.    As a direct and proximate result of Plaintiff's conduct Defendants have suffered injury.

**AS AND FOR  A SIXTH COUNTERCLAIM AGAINST THE DEBTOR**

74.    Defendant repeats the prior allegations contained in paragraphs 1 through 72 herein.

75.    Plaintiff MATEH wilfully and knowingly made or caused to be made, directly or indirectly, false, fraudulent, and material misrepresentations to Defendant.    These misrepresentations include representations as to, inter alia, its ability and/or intention to timely close under the Contract, as alleged in detail above.

22

76.    All of the Agreements entered into between Helen May and the Debtor were based on the fraudulent inducements and misrepresentations of the Debtor that the Debtor had the ability to timely close on the Contract.

77.    As a direct and proximate result of Plaintiff's misrepresentations, Defendants have suffered injury.

## AS AND FOR A SEVENTH COUNTERCLAIM AGAINST THE DEBTOR

78.    Defendant repeats the prior allegations contained in paragraphs 1 through 76 herein.

79.    Plaintiff knowingly and deliberately and fraudulently conspired with Jack Lefkowitz and others to defraud Helen may by creating phony and false sham artifices and devices by way of three fabricated letters to defeat the rights of Helen-may in the bankruptcy proceeding.

80.    Said fraudulent conspiracy was with the intention both to commit bankruptcy fraud in violation of 18 U.S.C. 157 and to defraud Helen May out of its duly bargained for rights under its various agreements.

81.    As a direct and proximate result of the misrepresentations of the Debtor, Defendants have suffered injury.

### AS AND FOR  A EIGHTH COUNTERCLAIM AGAINST THE DEBTOR

82.     Defendant repeats the prior allegations contained in paragraphs 1 through 80 herein.

83.     Plaintiff knowingly and deliberately circulated fraudulent claims and writings about actual and constructive eviction to defeat the rights of Helen May.

84.     Said fraudulent conduct  to was with the intention both to commit bankruptcy fraud in  violation of 18 U.S.C. 157 and to defraud Helen May out of its duly bargained for rights under its various agreements.

85.     As a direct and proximate result of Plaintiff and misrepresentations of the Debtor, Defendants have suffered injury.

## AS AND FOR A  NINTH COUNTERCLAIM AGAINST THE DEBTOR

86.     Defendant repeats the prior allegations contained in paragraphs 1 through 84 herein.

87.     By virtue of the foregoing, Plaintiff is alternatively entitled to judgment against the Debtor declaring Helen May the equitable owner of the two contiguous parcels purchased by the Debtor and impressing a constructive trust upon the two contiguous parcels and compelling the transfer of the two contiguous parcels to Helen-may as representing the funds that the Debtor ought to  have used to pay Helen-May and/or as payment for the damages for the breach of contract and frauds engaged in by the Debtor as set forth herein

**WHEREFORE**,  Defendants demand judgement that the,

a.     Complaint be dismissed and granting Defendant the costs and disbursements of this action;

b.     On the First Counterclaim for all payments due and owing under the Occupancy Agreement and Conditional Extension Agreement in an amount not less than $500,000.00;

c.     On the Second Counterclaim for all damages arising out of Plaintiff's breach of its various agreements with Helen-May in an amount not less than $2,000,000.00;

d.     On the Third Counterclaim for all damages arising out of Plaintiff's illegal construction and improvements at the Property in an amount not less than $1,000,000.00.

e.      On the Fourth Counterclaim for all the consequential damages arising out of Plaintiff's breach of contract including lost business opportunities in an amount not less than $2,000,000.00.

f.      On the Fifth Counterclaim for all damages arising out of Plaintiff's breach of its duty of good faith and fair dealing with Helen May with respect to all of the agreements in an amount not less than $1,000,000.00.

g.      On the Sixth Counterclaim for all damages arising out of Plaintiff's false fraudulent and tortious conduct with respect to its misrepresentations as to its intention and ability to close in an amount not less than $1,000,000.00.

h.      On the Seventh Counterclaim for all damages arising out of Plaintiff's false fraudulent and tortious conduct with respect to its conspiracy to commit fraud with Mendel Friedman to defeat the rights of Helen May in an amount not less than $1,000,000.00.

i.      On the Eighth Counterclaim for all damages arising out of Plaintiff's false fraudulent and tortious conduct with respect to its fraudulent misrepresentations as to actual and construction evictions of Helen May in an amount not less than $1,000,000.00.

j.      On the Ninth Counterclaim for all damages arising out of Plaintiff's numerous frauds and intentional breaches of contract the impression of a constructive trust on the two contiguous parcels purchased by the Debtor

Dated: New York, New York
          August 20, 2007

                              **THE LAW OFFICES OF DAVID CARLEBACH, ESQ.**
                              Attorneys for Defendants

                    By:      s/David Carlebach, Esq. (DC-7350)
                              David Carlebach, Esq. (DC-7350)
                              40 Exchange Place
                              New York, New York 10005
                              Tel. No.: (212) 785-3041